UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| OSCAR SERRANO | ) | |
| | ) | |
| v. | ) | No. 3:12-0356 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"), along with a brief and exhibits in support of the Motion (Docket Nos. 2, 2-1). The Government has filed a Response to the Motion (Docket No. 32), and the Petitioner has filed reply briefs (Docket Nos. 33, 34).

For the reasons set forth below, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with participating in a Racketeer Influenced Corrupt Organization ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); assault with a dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3) (Count Three); attempted murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5) (Count Four); witness tampering, in violation of 18 U.S.C. §§ 1512(a)(1)(C), (a)(3)(B), (k) (Count Five); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Six and

Fifteen). (Third Superseding Indictment (Docket No. 770 in Case No. 3:07-00005)). Named as Co-Defendants were Escolastico Serrano, Omar Gomez, David Gonzalez, Ernesto Mendez-Tovar, Francisco Mendez, Walter Hernandez, Henry Garballo-Vasquez, Eliseo Iglesias, Ronald Fuentes-Majano, Ericka Cortez, Geovanni Pena, Jose Alfaro, and Manuel Marquez. (Indictment (Docket No. 3 in Case No. 3:07-00005)).

Petitioner pled guilty to Counts One and Fifteen pursuant to a Plea Agreement based on Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in which the parties agreed to an advisory sentencing guideline range of 360 months to life. (Docket Nos. 885, 1046 in Case No. 3:07-00005). At the subsequent sentencing hearing, the Court sentenced the Petitioner to life imprisonment. (Docket Nos. 1002, 1003, 1043 in Case No. 3:07-00005).

Petitioner appealed the sentence to the Sixth Circuit, but the appeals court dismissed the appeal based on the waiver of appeal provision in the Plea Agreement. (Docket Nos. 1010, 1049 in Case No. 3:07-00005).

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy,

---

[1] 28 U.S.C. § 2255 states, in part:

A prisoner in custody under sentence of a court established by Act

however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Amr v. United States, 280 F. App'x 480, 485, 2008 WL 2246367 (6th Cir. June 2, 2008); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, transcripts, and records filed by the

---

of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

Petitioner argues that he received the ineffective assistance of trial counsel in the underlying criminal proceeding. In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985); Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed. 2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome."

4

Strickland, 104 S.Ct. at 2052.

Petitioner alleges that he attended a plea conference in June or July, 2008 that was also attended by Assistant United States Attorney ("AUSA") John Han, AUSA Jimmie Lynn Ramsaur, two unidentified FBI agents, court-appointed interpreter Myra Gann, Petitioner's trial counsel Barry Tidwell, and the Petitioner. (Docket No. 2, at 3). According to the Petitioner, the Government outlined its case against him and offered him three options: plead guilty and cooperate; plead guilty without cooperating; or proceed to trial. (Id.) The Petitioner alleges that he told his attorney he wanted to proceed to trial. (Id., at 4). At this point, the Petitioner alleges: "Mr. Han, AUSA, produced a photo of an obviously deceased person, one Roberto Mejia, and implied that if Movant did not cooperate and plea the same could happen to him." (Id.) Petitioner argues that his attorney had a duty to object to the "indirect threat" by Mr. Han. (Id.) The Petitioner has attached an affidavit swearing to these facts. (Docket No. 2-1, at 2). Petitioner suggests that he feared that if he refused to plead guilty, he would be immediately deported to El Salvador and murdered as Mejia had been. (Docket No. 34).

Petitioner also alleges that in October or November, 2008, he attended a meeting to discuss the Government's latest plea offer. (Docket No. 2, at 4). The Petitioner alleges that the meeting was also attended by his attorney, Mr. Tidwell; his brother and Co-Defendant, Escolastico Serrano; and his brother's attorney, Jennifer Thompson. (Id.) At the meeting, according to the Petitioner, there was no interpreter present, and the attorneys explained the offer as including a maximum sentence of 30 years for the Petitioner, 40 years for Escolastico Serrano, and 30 years for another Co-Defendant, Ronald Fuentes. (Id.) The Petitioner states that the attorneys represented that all the Defendants would receive a sentence in the 20-25-year range

5

because of mitigating circumstances. (Id.) Petitioner alleges that his attorney told him he would receive a life sentence if he proceeded to trial and lost, and pressured and coerced him into accepting the plea offer. (Id.) Petitioner has attached his own affidavit and that of his brother swearing to these facts. (Docket Nos. 2-1, at 3, 5).

The record of the underlying criminal proceeding indicates that any issues regarding the Petitioner's understanding of the Plea Agreement or his decision to enter into it intelligently and voluntarily were addressed at length by the Court at the change of plea hearing.

At the outset of the hearing, the Court explained to the Petitioner, through an interpreter, that he was answering questions under oath, and that he could be prosecuted for perjury or false statement for failing to tell the truth. (Transcript of Change of Plea Hearing, at 8-9 (Docket No. 1046 in Case No. 3:07-00005)). The Court inquired of counsel as to how the Plea Agreement was explained to the Petitioner, and counsel stated:

> MR. TIDWELL: Just, Your Honor, just as a matter of background, since my first involvement in this case in January of 2007, myself and Mr. Serrano have communicated in English both verbally as well as written. The plea agreement that I went over with Mr. Serrano was an English version. We read that together. Went through the agreement, and I feel confident that he understands the provisions therein.
>
> Just this morning, I had indicated that if we needed a Spanish version, certainly that would be available, and he has indicated that the English version is fine.

(Id., at 9). At that point, the Court informed counsel and the Petitioner that the interpreter was present if he wanted to rely on her. (Id.) The Petitioner did not dispute counsel's statements about his ability to understand the English version of the Plea Agreement, nor did he request use of the interpreter.

The Court then summarized the elements of the offenses to which the Petitioner was

6

offering to plead guilty, and asked the Petitioner if he understood the nature, meaning and cause of the charges, to which the Petitioner answered: "I do understand perfectly." (Id., at 9-13). The Court then asked the Petitioner if he had talked with his attorney, Mr. Tidwell, about the charges and the facts upon which the charges are based. (Id., at 13). The Petitioner answered: "Yes, that's right. He's doing a very good job." (Id.) The Court asked the Petitioner if he was satisfied with his lawyer, and the Petitioner responded: "That's right, Your Honor." (Id., at 13-14).

The Court then advised the Petitioner that the maximum possible penalty for the charges to which he was pleading – 20 years on the RICO conspiracy charge and life imprisonment on the firearms charge – and specifically explained that the firearms charge carried a consecutive statutory sentence of ten years. (Id., at 14). The Petitioner answered that he understood those penalties "perfectly." (Id.) The Court then explained supervised release, restitution, loss of voting rights, and sentencing procedures. (Id., at 14-16). The Court specifically explained that through the Plea Agreement, the parties had agreed to a sentencing guideline range of 360 months to life, and that the Petitioner would not be able to withdraw his guilty plea if he were disappointed with the sentence. (Id., at 15-16). The Petitioner indicated that he understood that. (Id., at 16). The Court then moved to the subject of deportation:

> THE COURT: Mr. Tidwell, is there an issue about deportation possibly?
>
> MR. TIDWELL: There is, Your Honor.
>
> Q. Mr. Serrano, do you understand by pleading guilty here today it may result in your deportation at some point?
>
> A. That's right.

(Id., at 16).

The Court then explained the Petitioner's rights, and the rights he would be waiving by

7

pleading guilty, to which the Petitioner stated that he understood. (Id., at 16-17). The Court then went through the Plea Agreement, paragraph by paragraph. (Id., at 17-22). In explaining the provisions of the Plea Agreement, the Court again advised the Petitioner that he would be agreeing to a guideline sentencing range of 360 months to life. (Id., at 19, 20). The Court then asked the Petitioner:

> Mr. Serrano, has anyone forced you to plead guilty?
>
> A.  No, sir.
>
> Q.  Has anybody threatened you in any way to make you plead guilty?
>
> A.  No, sir.
>
> Q.  Has anybody offered you anything of benefit that's not in the plea agreement to encourage you to plead guilty?
>
> A.  No, sir.
>
> Q.  Have you had any drugs or alcohol in the last 12 hours?
>
> A.  I don't do drugs. I don't like drugs.
>
> Q.  Are you taking any prescription medication?
>
> A.  I am perfectly healthy.
>
> Q.  Is your mind clear, and do you know what you are doing?
>
> A.  It is perfectly clear.

(Id., at 22-23).

The Court then called on the Government to establish a factual basis for the plea, and the Government called Special Agent Mickey Welch to recite the facts underlying the guilty plea. (Id., at 23-30). After the witness testified, the Court recalled the Petitioner and counsel to the podium, and asked:

> Mr. Serrano, did you hear the witness testify?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Was his testimony about your conduct correct?
>
> THE DEFENDANT: That's right.
>
> THE COURT: Are you offering to plead guilty because you are in fact guilty as charged in Count One and Count 15 of the third superseding indictment?
>
> THE DEFENDANT: Yes, sir.

(Id., at 30). The Court then determined that Mr. Serrano's guilty plea was entered knowingly, intelligently, and voluntarily. (Id., at 31).

At no time during the change of plea hearing did the Petitioner indicate that he had been threatened by the Government to plead guilty or face deportation. Nor does the record indicate that the Petitioner raised this concern at the sentencing hearing, or otherwise. (Docket No. 1043 in Case No. 3:07-00005). The Petitioner clearly told the Court, under oath, at the change of plea hearing that his guilty plea was not the product of threats or coercion. Consequently, Petitioner has failed to demonstrate prejudice from any failure of counsel to challenge the Government's alleged threat of deportation at the earlier meeting.

Petitioner has also failed to establish that trial counsel was ineffective for advising him that the maximum sentence he would receive under the Plea Agreement was 30 years. Even if trial counsel made that statement, or the Petitioner misunderstood counsel's explanation of the maximum sentence under the Plea Agreement, the Court went over the sentencing range several times at the change of plea hearing. The Court clearly explained to the Petitioner that 30 years was the bottom of the sentencing range, with a life sentence as the maximum, and the Petitioner indicated he understood. The Petitioner did not ask the Court any questions about that

sentencing range, nor did he complain about trial counsel. Rather, he indicated that trial counsel was doing "a very good job." Petitioner also failed to raise any concerns about the maximum sentence at the sentencing hearing. (Docket No. 1043 in Case No. 3:07-00005). Accordingly, Petitioner has not demonstrated prejudice from any alleged failure of counsel to explain the maximum sentence under the Plea Agreement.

Petitioner's claim that counsel was ineffective for failing to arrange for the presence of an interpreter during plea discussions is also belied by the record. Petitioner did not dispute counsel's statement at the change of plea hearing that the Petitioner understood English. Moreover, the Court went over the Plea Agreement in exhaustive detail at that hearing, and at no time did Petitioner indicate that he was confused or failed to understand the Court's explanations. The Court further notes that the Petitioner was articulate when he spoke at his sentencing hearing, in English, and that his allocution spans four pages of the sentencing hearing transcript. (Transcript of Sentencing Hearing, at 153-57 (Docket No. 1043 in Case No. 3:07-00005)). Accordingly, the Court is not persuaded that counsel was ineffective regarding the absence of an interpreter, nor that Petitioner has demonstrated prejudice in that regard.

Petitioner's claim that counsel was ineffective for advising him to enter the Plea Agreement instead of insisting on a trial is also unpersuasive. Petitioner does not explain how such advice was deficient in light of the Government's case against him. Petitioner does not maintain his innocence nor does he suggest an effective defense that trial counsel failed to pursue. Accordingly, Petitioner has failed to demonstrate any prejudice regarding counsel's alleged advice against going to trial.

Petitioner also argues, in a general way, that counsel did not negotiate for him in good

faith, and failed to prepare for meetings with the Government to discuss plea bargaining. (Docket No. 2, at 7). Petitioner does not indicate, however, what trial counsel could have done to improve the Government's plea offer to him, nor does he suggest that his plea deal with the Government was less favorable than similarly-situated Co-Defendants.[2] The Court concludes that this claim lacks specificity, and is without merit.

Finally, the Petitioner argues that counsel was ineffective in failing to challenge the charges against him on statute of limitations grounds. (Docket No. 34). The RICO conspiracy charge to which the Petitioner pled guilty alleged a time frame from "in or about 1997, and continuing through in or about December 2006. . ." (Docket No. 770 in Case No. 3:07-00005). The firearms offense to which the Petitioner pled guilty alleged the same time frame as the RICO conspiracy count. (Id.) The Indictment in the underlying criminal case was initially filed on January 10, 2007. (Docket No. 3 in Case No. 3:07-00005). Both charges were subject to a five-year statute of limitations. See 18 U.S.C. § 3282; United States v. Hohn, 293 Fed. Appx. 395, 397 (August 20, 2008).

The Petitioner appears to argue that the statute of limitations barred his prosecution because he was incarcerated for nine years beginning in 1998. The record indicates otherwise. The Presentence Investigation Report ("PSIR") in the underlying criminal case indicates that a Tennessee state court imposed a nine-year sentence on the Petitioner on December 13, 1999 for attempted second degree murder, but that the Petitioner was deported to El Salvador before completion of the sentence, on April 13, 2005. (Docket No. 1020, at ¶ 77, in Case No. 3:07-

---

[2] Through Co-Defendant Fuentes' Plea Agreement, the parties agreed to a 360 month-to-life sentencing range, and the Court also imposed a life sentence at Defendant Fuentes' subsequent sentencing hearing. (Docket Nos. 884, 936 in Case No. 3:07-00005).

00005). The PSIR further indicates that, less than a year later, the Petitioner was charged, and later pled guilty to, evading arrest with a motor vehicle in Davidson County, Tennessee on June 6, 2006. (Id., at ¶ 78). Thus, the record indicates that the Petitioner was not incarcerated for the full nine-year sentence, and was present in the United States as of June 6, 2006.

Furthermore, the Petitioner admitted to conduct falling within the statute of limitations period. The statement of facts to which the Petitioner agreed through the Plea Agreement and during the change of plea hearing specifically states that the Petitioner attempted to kill rival gang members with firearms during incidents in December, 2005, on May 21, 2006, and on May 22, 2006. (Docket No. 885, at p. 7-9, in Case No. 3:07-00005; Docket No. 1046, at 27-29, in Case No. 3:07-00005). These events occurred within two years prior to the date the Indictment was issued, and well within the statute of limitations period. Petitioner's statute of limitations argument is without merit. Consequently, Petitioner has failed to demonstrate that counsel was ineffective in failing to raise such a claim. See, e.g., Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial

of a constitutional right. <u>Castro v. United States</u>, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE